U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

FEB 25 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Skinner | Civil Action No. 13-3146 |
| versus | Judge Richard T. Haik, Sr. |
| Schlumberger technology Corp., et al | Magistrate Judge C. Michael Hill |

**MEMORANDUM ORDER**

Before the Court is a Motion Of Plaintiff, Richard Skinner, To Remand This Matter To The 15th Judicial District Court For the Parish Of Lafayette From Whence It Was Wrongfully Removed And That Just Costs And Actual Expenses Be Assessed Against Schlumberger Technology Corporation Pursuant To 28 U.S.C. § 1447(c) [Rec. Doc. 9], defendant, Schlumberger Technology Corporation's, Opposition [Rec. Doc. 14], plaintiff's Reply [Rec. Doc. 16], Schlumberger's Sur-reply [Rec. Doc. 17] and plaintiff's Reply thereto [Rec. Doc. 24]. For the reasons that follow, plaintiff's motion will be denied.

*I. Background*

Plaintiff, Richard Skinner, was hired by Coil Tubing Services ("CTS"), a subsidiary of Schlumberger Technology Corporation ("Schlumberger"),[1] on December 6, 2010 as a Field Specialist Trainee. *R. 14-1, Dec. Of Babineaux, ¶ 1.* Plaintiff worked onshore, offshore on platforms and vessels and on inland waters. *Id.* Plaintiff initially spent eleven days in December 2010 undergoing paid, onshore training and did not work from any vessels

---

[1] For purposes of this motion, the names CTS and Schlumberger are used interchangeably to refer to the same Schlumberger entity.

until February 23, 2011. *Id. at ¶¶ 2, 3, 4.* Plaintiff alleges he was injured during an offshore job while on board the L/B BULL SHARK, a lift boat owned and operated by defendant, Hercules Liftboat Company, while the vessel was jacked up and servicing a fixed platform well. Plaintiff's last day of active employment with Schlumberger was January 27, 2012. *Id.*

Plaintiff filed this action in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, asserting claims under the general maritime law and a claim under the Jones Act against his employer, Schlumberger. *R. 1.* Schlumberger removed the action to this Court on November 27, 2013. *R. 1, Notice of Removal.* Plaintiff now moves to remand the case to state court, asserting that remand is proper because defendant has not met its burden to show that plaintiff fraudulently pleaded a claim under the Jones Act. *R. 9.* Plaintiff also argues that Schlumberger "has not provided 'a short and plain statement of the grounds for removal'" which warrants remand. *Id.*

## II. Standard

Jones Act cases are generally not removable from state court. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir.1995). However, in certain circumstances, "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Id.* To determine whether to retain jurisdiction or remand the case, the court may use a "summary judgment-like procedure" and "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of

2

the plaintiff." *Id.* at 176. The removing party has a heavy burden of persuasion to show that the Jones Act claim is fraudulently pleaded. *Id.* at 175. It bears the burden of showing that "there is no possibility that plaintiff would be able to establish a cause of action," *id.* at 176, and the district court may deny remand only if it "determine[s] that as a matter of law there was no reasonable basis for predicting that the plaintiff might establish liability," *id.*

### *III. Analysis*

Defendant contends that plaintiff fraudulently pleaded a Jones Act claim because plaintiff has no possibility of establishing that he was a Jones Act seaman. The threshold basis for stating seaman status under the Jones Act is: 1) the worker's duties contribute to the function, mission, operation, or welfare of the vessel; and 2) the worker has a connection to a vessel or fleet of vessels that is substantial in terms of both duration and nature. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-388 (5th Cir.2003)(citing *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995)). A fleet of vessels is "an identifiable group of vessels that is acting together or under one control." *New v. Assoc. Painting Servs., Inc.*, 863 F.2d 1205, 1208 (5th Cir.1989). The Fifth Circuit has rejected the notion that a fleet of vessels means "any group of vessels an employee happens to work aboard." *Campo v. Electro–Coal Trans. Corp.*, 970 F.2d 51, 52 (5th Cir.1992). To meet the test for seaman status, a claimant must prove either (1) his permanent assignment to a vessel or fleet of vessels, or (2) performance of a substantial part of the claimant's work on a vessel or fleet of vessels. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986). To determine whether and employee has

3

a substantial connection to a vessel or a fleet of vessels in navigation, the Supreme Court has adopted a rule of thumb: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 368.

Defendant argues that plaintiff was not a seaman entitled to damages under the Jones Act, because he cannot demonstrate that he had an employment connection to any vessel, or an identifiable group of vessels, substantial in both nature and duration. Schlumberger has produced declarations from its District Manager for Coil Tubing Services, Cory Babineaux, Richard Skinner's supervisor, who attests that the document entitled "Personnel and Training Tracker" ("Tracker"), *R. 14-2,* attached to Babineaux's Declaration, "accurately reflects the times, clients, and locations of Richard Skinner's assignment while working for Coil Tubing Services." *Id. at ¶ 15, R. 22-1, Supp.Dec. Of Babineaux.*

The Tracker includes a legend of abbreviations and identifies the dates plaintiff worked on a job location ("O), was on standby (on land) ("SB"), was in training (on land) ("T"), was on his days off ("DO"), was on vacation ("V"), or was sick ("S"). *R. 14-2.* During plaintiff's actual work period with Schlumberger, from February 23 to November 28, 2011, the Tracker indicates plaintiff worked on job locations on eighteen separate occasions and seventeen of those job assignments involved some work on vessels. *R. 14-4, Overall Work Summary.* A combination of eight different vessels were utilized on the seventeen job assignments involving vessels. *Id.*

4

Plaintiff contends that his work time for purposes of seaman status should not include his time spent training to go offshore and after he was injured. Thus, using plaintiff's calculation specifications, the record indicates that he worked a total of 189 days for CTS (175 days with vessels and 14 days without vessels). *R. 16-4, p.3.* The BENGAL 160 was the only vessel operated by CTS. *R. 14-1, 14-5, 14-6.* Plaintiff worked 36 days on the BENGAL 160 for 19% (36/189) of his work time. *R. 14-1, 14-2, 14-3, 14-4.* Plaintiff performed jobs on four vessels operated by Offshore Marine Contractors–L/B LOUIS J. EYMAND, L/B OLIVIA GRACE, L/B AJ BOURG AND L/B WYATT LEE–the only identifiable fleet of vessels. *Id., 14-5.* He worked a total of 42 days with this fleet of vessels for a total of 22% (42/189) of his work time. *R. 14-1, 14-2, 14-3, 14-4.* Plaintiff's last job prior to his alleged injury was on the L/B BULL SHARK, owned and operated by Hercules Liftboat Company, on which he worked 15 days for a total of 8% of his work time. *Id.* Plaintiff's work time was further made up of 1.6 % on the L/B JUAN, owned and operated by Montco Offshore, and 5.3 % on the Q4000, operated by Helix Energy Solutions Group, Inc. *Id., 14-6.* Thus, viewed in the light most favorable to plaintiff, the record establishes that plaintiff did not serve a vessel or group of vessels under the control or ownership of one entity for more than 30 % of his work time.

Plaintiff argues that the days he spent working on land at CTS's district office in Maurice, Louisiana, marked "D" for District days in the Tracker, "should be allocated to the plaintiff's offshore vessel jobs and work time." *R. 16-2, p. 10.* Plaintiff cites *Davis v. Hill Engineering, Inc.*, 549 F.2d 314 (5th Cir. 1977) in support of this position. *Davis* stands for

the proposition that a worker may qualify as a crew member if he does substantial work on the vessel even though his assignment to it is not "permanent." In order to prove substantial work equivalent to permanent assignment "it must be shown that the claimant performed a significant part of his work **aboard the vessel** with at least some degree of regularity and continuity, which evinced a vessel relationship that is substantial in point and time and not merely spasmodic. This reflects more than a transitory connection with a vessel or a specific group of vessels." *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986) (en banc) (emphasis supplied). Based on the established jurisprudence, it is axiomatic that plaintiff's time spent working on land is not counted as time "aboard the vessel."

Plaintiff argues in the alternative that he was permanently assigned to the BENGAL 160 such that it entitles him to be classified as a Jones Act seaman–apparently under an exception set forth by *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). The *Chandris* court noted there is a limited exception to the requirement that an employee must spend at least thirty percent of his entire employment on vessels.

> If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." Thus, a worker who, over the course of his employment, has worked in the service of a vessel in navigation well under thirty percent of his time may still qualify for seaman status if he has been reassigned to a new position that meets this temporal requirement.

*Id.* at 372

The record establishes that throughout the duration of his employment with

6

Schlumberger, plaintiff held the same position–a Coiled Tubing supervisor trainee. *R. 14-1, 17-1*. During his employment, plaintiff was sporadically assigned to eight different vessels. *Id.* Plaintiff's last assignment to work on the BENGAL 160 was July 19-23, 2011. *Id.* Thereafter, plaintiff worked on five different vessels over the next six months of his employment with Schlumberger. *Id.* Between his vessel assignments plaintiff worked on land at the CTS district office. *Id.* The Court finds that, during his employment with Schlumberger, plaintiff was never reassigned to a new work assignment in which his essential duties were changed such that the requirement for seaman status was met.

Plaintiff also argues that the lift boats which were provided for the use of the Schlumberger Coiled Tubing teams, of which he was a member, "constituted a fleet of vessels under the common control of Schlumberger, the vessel owners, and the customer." Plaintiff includes an extensive list of his job duties which "furthered the mission of the lift boats." *R. 9-1, pp. 3-6*. In other words, that control over a group of vessels should not be determined by who owns or charters the vessels but, instead, should be determined by who performs or supervises the practical operations aboard the vessels. Thus, plaintiff contends, Schlumberger's exercise of "operational control" over the boats, should satisfy the common control requirement.

The plaintiff in *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376, 380 (5th Cir. 2000) made an argument similar to plaintiffs. Citing *Bertrand v. Int'l Mooring & Marine Inc.*, 700 F.2d 240 (5th Cir.1983), the Fifth Circuit rejected the plaintiff's

7

argument stating,

> [T]he court in *Bertrand* was concerned with denying seaman status to anchor handlers, traditional maritime workers, merely because of the contractual arrangements made by their employer. Our decisions after *Bertrand* have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels. We are not persuaded by the proposed operational control test. To accept that position would involve the court in analyzing the day-to-day minutiae of a liftboat's operations. This we decline to do and, rather, resort to developed workable standards for determining who qualifies as a seaman under the Jones Act. In doing so we must decline to depart from these established principles.

*Id.* at 380.

As to plaintiff's contention that the Court should remand this action because Schlumberger's notice of removal did not contain "a short and plain statement of the grounds for removal," the Court disagrees and finds that the notice of removal complies with 28 U.S.C. § 1446 and sufficiently establishes jurisdictional grounds for removal. *R. 1.* Accordingly,

**IT IS ORDERED** that plaintiff, Richard Skinner's, Motion To Remand [Rec. Doc. 9] is **DENIED**.

Thus done and signed this 24th day of February, 2014 at Lafayette, Louisiana.

Richard T. Haik, Sr.
United States District Judge