U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

JUN 02 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Skinner

versus

Schlumberger Technology Corp., et al

Civil Action No. 13-03146

Judge Richard T. Haik, Sr.

Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment On Plaintiff's Jones Act Claim filed by defendant, Schlumberger Technology Corporation ("Schlumberger") [Rec. Doc. 72], Plaintiff, Richard Skinner's opposition [Rec. Doc. 79], Schlumberger's Reply [Rec. Doc. 89] and Plaintiff's Sur-reply [Rec. Doc. 99]. No oral argument is necessary. For the following reasons, Schlumberger's motion will be granted.

*Background*

In his Declaration dated December 24, 2013, Plaintiff states he was hired to work for Schlumberger "as a Coiled Tubing supervisor trainee, the position that [he] held on the day [he] was injured." *R. 9-2, Plaintiff's Declaration.* Plaintiff further states he "worked for Schlumberger from December of 2010 until [he] was injured on the Hercules lift boat, the L/B Bull Shark, on January 8, 2012, while [he] was employed by Schlumberger." *Id.* Plaintiff originally filed this action in the Fifteenth Judicial District Court, Lafayette Parish, alleging that at the time of the incident, he was a Jones Act Seaman and Schlumberger was his employer. *R. 1-3.* Schlumberger removed the case to this Court on November 27, 2013, asserting that Plaintiff's Jones Act claims were fraudulently pled. *R. 1.* On February 25, 2014, the Court entered an order denying plaintiff's motion to remand as the record before it did not support Plaintiff's claims as a Jones Act Seaman. *R. 26.* In particular, the Court held that because the record established that "plaintiff did not serve a vessel or group of

vessels under the control or ownership of one entity for more than 30% of his work time" for Schlumberger, plaintiff did not qualify as a Jones Act Seaman. *Id.*

This motion for summary judgment was filed on October 17, 2014, without opposition. The Court entered judgment granting the motion on November 21, 2014. On December 20, 2014, plaintiff moved for a new trial, stating that his intention to file an opposition in response to the motion for summary judgment was hindered by counsel for Schlumberger and submitted a memorandum as to what would have been his response. *R. 77*. The Court granted the motion for new trial on March 18, 2015 and ordered that it would consider plaintiff's response and allow Schlumberger to file a reply brief. *R. 86*. Schlumberger filed its reply on April 17, 2015. *R. 89*. On April 23, 2015, the Court granted Plaintiff's motion for an extension of time to file a sur-reply. *R. 91*. Plaintiff filed a sur-reply on May 19, 2015. *R. 99*. The Court will address Schlumberger's motion in light of the briefs filed by both parties.

*Legal Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it might affect the outcome of the suit." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir.2014). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir.2014). If the moving party meets this initial burden, "the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.*

*Analysis*

Schlumberger maintains that all of the evidence in this case support its position that Plaintiff cannot met the seaman duration rule—that an employee seeking Jones Act seaman status must be able to demonstrate he spends at least thirty percent of his work in service of a vessel in navigation. Schlumberger further maintains that Plaintiff was always employed as a coiled tubing worker and was assigned to work on a number of vessels including the LOUIS J. EYMARD, BENGAL 160, OLIVIA GRACE, A.J. BOURG, JUAN, WYATT LEE, DEEPWATER and BULL SHARK.

Plaintiff argues the coiled tubing work he performed after his work on the BENGAL 160, between August 1, 2011 and January 14, 2012, constituted a new assignment and his seaman status should be evaluated using only the total hours he worked during that period of time. Plaintiff further contends that all of his work at Schlumberger's District Office located in Maurice, Louisiana, was in the service of a vessel or fleet of vessels and should be considered in calculating his work on vessels in determining his seaman status.

Hence, the issue before the Court is whether or not Plaintiff has proven that he is a seaman—that is, (1) he contributed to the function of a vessel or to the accomplishment of its mission, and (2) he was assigned permanently to the vessel or spent a substantial part of his total work time (30%) aboard the vessel or an identifiable fleet of vessels. Schlumberger does not dispute the first prong of the seaman test, but maintains that all of the records support that Plaintiff spent less that 30% of his work with Schlumberger aboard a vessel or

3.

fleet of vessels. If Plaintiff fails to demonstrate at least a genuine dispute as to a material fact with respect to the second prong, Schlumberger is entitled to summary judgment.

The Fifth Circuit most recently addressed seaman status in *Alexander v. Express Energy Services Operating, L.P.,* — F.3d ----, 2015 WL 2151773 (5th Cir. 2015). Emphasizing the basic understanding of the law required to determine whether or not the plaintiff was a seaman, the court stated as follows:

> To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. Land-based workers are not seamen. To qualify as a seaman, a plaintiff must prove that he meets both prongs of the test set out by the Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). First, he must prove that his duties 'contribut[e] to the function of the vessel or to the accomplishment of its mission,' which does not necessarily require that the plaintiff 'aid in navigation or contribute to the transportation of the vessel,' but does require that he 'be doing the ship's work.'
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. *See* 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2–10.1 to 2–11 (7th ed.1994) ('If it can be shown that the employee performed a significant part of his work **on board the vessel** on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied' (footnote omitted)). This requirement therefore determines which maritime employees in *Wilander's* broad category of persons eligible for seaman status because they are 'doing the ship's work,' [ *McDermott Int'l., Inc. v. Wilander*, 498 U.S. 337, 355, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) ], are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.

*Id. at 1* (citations omitted).

The *Alexander* court further emphasized the holding in *Chandris* that "[a] maritime worker who spends only a small fraction of his working time **on board a vessel** is

fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are." *Id. at 2* (citing *Chandris*, 515 U.S. at 371). The court explained it was this principle by which the Supreme Court in *Chandris* adopted the Fifth Circuit's rule of thumb for ordinary cases that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* The plaintiff bears the burden of proof for establishing seaman status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003).

*The 30% Rule*

As to whether Plaintiff had a substantial employment connection to any vessel, or an identifiable group of vessels, substantial in both nature and duration, Schlumberger cites to evidence contained in its January 25, 2014 Memorandum in Opposition to Plaintiff's December 27, 2013 Motion to Remand, *R. 14*,[1] as well as other more recently obtained evidence. Schlumberger relies on a "Personnel and Training Tracker" ("Work Tracker") which "reflects the times, clients, and locations of Richard Skinner's assignment while working for Coiled Tubing Services." *R. 14-1 at ¶ 15, R. 22-1, Supp. Dec. Of Babineaux.* The Work Tracker includes a legend of abbreviations and identifies the days plaintiff worked on a job location (on a vessel) ("O"), worked at the "District" (on land) ("D"), was on standby (on land) ("SB"), was in training (on land) ("T"), was on his days off ("DO"), was on vacation ("V"), or was sick ("S"). *Id.*

---

[1] Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure states that a party may "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;"

Plaintiff argues that he meets the 30% rule by using his work hours instead of work days which Schlumberger used in its opposition to Plaintiff's motion to remand.[2] In response, Schlumberger also includes the Time and Expense Reports which Plaintiff filled out and which account for the number of hours Plaintiff worked at Schlumberger during the majority of his employment. *R. 89-1*. Schlumberger notes that because Plaintiff filled out the Time and Expense Reports "intermittently," his work without a corresponding Time and Expense Report would not be accounted for. Therefore, Schlumberger includes Exhibit B-1 listing the periods Plaintiff worked as provided on the Work Tracker but are missing from the Time and Expense Reports. Schlumberger represents that an average of Plaintiff's hours was used for every day the Work Tracker states Plaintiff worked even though there is no corresponding Time and Expense Report.[3]

First, Schlumberger provides a breakdown of the number of hours Plaintiff spent working with each vessel during his entire employment with Schlumberger, December 2010 through January 2012, and then calculates the percentage of his total time that his work on that vessel represents. *R. 89, Table 2*. The calculations show that Plaintiff did not work at least 30% of his total time with Schlumberger on board any vessel. Next, Schlumberger provides the number of hours and percentage of Plaintiff's work during his employment which have been calculated based on the same **owner's** fleet of vessels and then by the same **operator's** fleet of vessels. *R. 89, p. 5, Table 3, 4*. In deriving the number of hours Plaintiff worked on each vessel, Schlumberger represents it assumed Plaintiff worked 100% of his time on the vessel rather than dissecting the time he actually spent on the vessel versus the

---

[2] See the Court's February 25, 2014 Memorandum Order. *R. 26*.

[3] Using the average time Plaintiff spent on the various types of activity, Schlumberger determined Plaintiff's average work at the District was 8.14 hours/day; at training was 11.67 hours/day; and, on location working on the vessel was 15.48 hours/day.

6.

time he was working on a platform. Even giving Plaintiff these benefits, those calculations also indicate that Plaintiff never worked at least 30% of his entire time in service for any fleet owner or fleet operator.

While the thirty percent rule of thumb looks at the entire length of a plaintiff's employment with the defendant, the Supreme Court has articulated an exception to this 30-percent requirement "[w]hen a maritime worker's basic assignment changes." *Chandris*, 515 U.S. at 372. "If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.* "Thus, a worker who, over the course of his employment, has worked in the service of a vessel in navigation well under thirty percent of his time may still qualify for seaman status if he has been reassigned to a new position that meets this temporal requirement." *Becker*, 335 F.3d at 389. An otherwise land-based worker must show that his "essential duties" had "substantial[ly]" or "fundamentally" changed, not merely that he "serve[d] on a boat sporadically." *Id.* at 388–91. For the purposes of the Jones Act, a "permanent" assignment means an assignment that is " 'for an indefinite period'—not temporary." *Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 599–600 (5th Cir.1986). It is this exception that Plaintiff now tries to utilize.

First, plaintiff claims that his service on the BENGAL 160 was a new assignment because the BENGAL 160 was an "inshore fracking vessel" and he worked for one customer, Helis Oil Company, in support of one drilling company, Tetra Technologies. He also claims there were differences in the purpose and mission of the vessel, the hours and days of the crew and his job. Finally, he claims this new assignment ended after a "continuous and many-month assignment." R. 79-1. Plaintiff then contends he was terminated from his work

7.

on the BENGAL 160 and assigned to participate in various offshore coiled tubing assignments. Because the work he was performing "[b]etween August 6, 2011 and January 14, 2012" was completely different from his previous assignment on the BENGAL 160, Plaintiff contends it constituted a new assignment. In essence, Plaintiff argues, because his work on the Bengal 160 from March 19, 2011 to July 23, 2011 was a new work assignment, after he left the Bengal 160, his continued employment with Schlumberger from August 1, 2011 to January 14, 2012 was also a new work assignment.

Plaintiff has declared he was hired to work for Schlumberger as "a Coiled Tubing supervisor trainee," which was the same position he held on the day he was injured. *R. 9-2, Plaintiff's Decl.* Plaintiff stated in his deposition, he just volunteered to work on the BENGAL 160 when Schlumberger asked "if anybody wanted to do it." *R. 89-6, Plaintiff's Depo., p. 34.* While Plaintiff does not represent whether or not he understood that the position was permanent, Toby Falcon, his supervisor, testified that while on the BENGAL 160 Plaintiff "may run the pumps over there one day, be on a coil tubing job the next." *R. 85-1, p. 20, Depo. Of Falcon, p. 98, l. 24 - p. 99, l. 1.* Falcon further testified he could assign Plaintiff anywhere from one job to the next. *Id. at p. 100, l. 18-20.*

While Plaintiff includes in his brief a portion of the deposition of Cory Babineaux as evidence that his essential duties were changed on the BENGAL 160, Babineaux merely states that he didn't know whether or not the BENGAL 160 was a new job for Plaintiff. *R. 85, p. 6.* Plaintiff admits that the work to prepare for coiled tubing jobs and his job on the BENGAL 160 was the same. *R. 89, Exh. E, p. 38, l. 20 - p. 39, l. 4.* Moreover, Plaintiff conceded his stint on the BENGAL 160 was interrupted when he was sent on a coiled tubing job on a vessel owned and operated by a different company. *Id. at p. 35.* The records indicate Plaintiff served on the OLIVIA GRACE from May 30, 2011 to June 1, 2011. *R. 89-*

*4.* The Time and Expense Reports and the Work Tracker both indicate that Plaintiff never underwent any training for the BENGAL 160 job. Plaintiff's work on the BENGAL 160 was terminated on July 23, 2011, after which Schlumberger sent him on a number of different coiled tubing jobs.

These facts indicate that Plaintiff's assignment on the BENGAL 160 was not a permanent assignment. Plaintiff has provided no evidence to show that his work was a permanent change, but more importantly the record indicates that during the period he worked on the BENGAL 160 he was assigned to work briefly on a different vessel. Then, less than two months later he was reassigned to work on a number of other vessels. Nor has Plaintiff produced evidence that his "essential duties" "substantially" or "fundamentally" changed because of his assignment to the BENGAL 160. Falcon, his supervisor, testified that the work was sporadic in that Plaintiff may be pumping on the BENGAL 160 one day and running coiled tubing the next. Plaintiff confirmed that his preparation at the District did not change when he worked on the BENGAL 160. More importantly, Plaintiff stated in his 2013 declaration that he was a coiled tubing supervisor trainee during his employment with Schlumberger.

The Fifth Circuit has rejected claims of seaman status as a matter of law in numerous cases in which temporary offshore workers such as Plaintiff claimed that they were permanently reassigned for a discrete voyage in which their essential duties did not change. *See, e.g., Becker*, 335 F.3d at 390–93; *Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987); *Barrett* v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1076 (5th Cir. 1986); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir.1980); *see also Wilcox v. Welders*, 969 F.Supp.2d 668 (E.D.La.,2013) (Africk, J.); *Ausama v. Tetra Applied Technologies, LP*, 2006 WL 1968858 (E.D.La. June 1, 2006) (Lemelle, J.). The facts of this case are similar to those

in which the Fifth Circuit has previously held that a temporary offshore worker was not permanently reassigned to a vessel. The Court finds that Plaintiff has failed to show that he was permanently reassigned to the BENGAL 160 such that his reassignments from August 6, 2011 to January 14, 2012 were "new assignments."

Schlumberger states that it is not necessary to determine whether or not Plaintiff received a new assignment because, even assuming *arguendo* that Plaintiff's work after the BENGAL 160 was a new assignment and that time is analyzed in a vacuum, he does not meet the 30 percent rule of thumb. The Court agrees. In addition to the total work calculations provided in the foregoing, Schlumberger also performed calculations using the hours Plaintiff worked since his last assignment on the BENGAL 160, August 6, 2011 to January 14, 2012—the period during Plaintiff's purported "new assignment." Even considering this limited work period, the percentage of Plaintiff's time spent working on each vessel, each fleet owner's vessels as well as each fleet operator's vessels is less than 30% of his time during that period of his service.

Plaintiff contends that after his work on the BENGAL 160, from August 6, 2011 to January 14, 2012, he spent "37% of his time in service of vessels controlled by Chevron [the A.J. BOURG and the JUAN]" and "48% of his time on vessels operated by Offshore Marine Contractors, LLC." *R. 79-1, p. 9-10.* Plaintiff cites the Court to a demonstrative pie chart indicating his service on the A.J. BOURG, JUAN, WYATT LEE, DEEPWATER and the BULLSHARK and a table indicating "Hours in service of vessel." *R. 79-4, Exh. 3, p. 2, 3.* Although Plaintiff does not provide any calculations showing how he derived these percentages, it is evident from the exhibits that he considered 100% of his work time, including his work on land, to be in the service of the vessels. While this is consistent with Plaintiff's continued argument that his "[w]ork [on land] at the [Schlumberger Maurice] District Office is properly classified as work in the service of the vessels", it is wholly

contradictory to calculations based on the Work Tracker and the Time and Expense Reports as well as the Fifth Circuit jurisprudence.[4] Calculations using the Work Tracker, confirmed by the Time and Expense Reports, provide that from August 6, 2011–January 23, 2012[5], Plaintiff spent 256 hours working for Chevron on board the A.J. BOURG and the JUAN, or 20% of his time on board those vessels, and 347.91 hours working on board the fleet of vessels owned by Offshore Marine Contractors, Inc., or 28% of his time on vessels within the fleet.[6] *R. 89-4.*

Thus, regardless of whether or not Plaintiff was working under a new assignment when he was injured, or whether his seaman status calculations are based on the number of days or the number of hours he worked **on board vessels**, he can not show that at least 30% of his time was spent in the service of a vessel or an identifiable fleet of vessels under common ownership or control, and therefore, he can not prove seaman status.

*Conclusion*

In light of the foregoing, including the record of this case and the relevant jurisprudence, the Court finds that Plaintiff, Richard Skinner, has failed to prove that he is entitled to seaman status under the Jones Act. The Court will therefore grant Schlumberger's Motion For Summary Judgment.

Richard T. Haik, Sr.

---

[4] The Court dismissed this argument in its ruling on Plaintiff's motion to remand, holding that "[b]ased on the established jurisprudence, it is axiomatic that plaintiff's time spent working on land is not counted as time 'aboard the vessel.' " See *Alexander*, 2015 WL 2151773 at 4.

[5] Schlumberger's records indicate Plaintiff was in training from January 13 to January 26, 2011. *R. 89-4.*

[6] During that same period, Plaintiff's calculations indicate he spent 419.5 hours on the A.J. BOURG and the JUAN and 548.5 hours working for the fleet of vessels owned by Offshore Marine Contractors, Inc. *R. 79-4, Exh. 3, p. 2.*