U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

JUL 13 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Skinner | Civil Action No. 13-03146 |
| versus | Judge Richard T. Haik, Sr. |
| Schlumberger Technology Corp., et al | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court is are three Motions For Summary Judgment filed by Defendants, EPL Oil & Gas, Inc. ("EPL") [Rec. Doc. 93], Hercules Lift Boat Company, LLC ("Hercules") and Paul Gueho ("Gueho") (sometimes collectively referred to as "Hercules") [Rec. Doc. 94] and Greene's Energy Group, LLC ("Greene's") [Rec. Doc. 95] as well as Plaintiff, Richard Skinner's Opposition To Motions For Summary Judgment File by EPL, Hercules and Gueho and Greene's [Rec. Doc. 104]. Oral argument is not necessary. For the reasons that follow, the Court will grant the motions for summary judgment.

*I. Background*

Plaintiff, Richard Skinner, worked for Schlumberger Technology Corporation ("Schlumberger") performing offshore coiled tubing work. At the time of the coiled tubing work, EPL was the operator-or-record of the subject well. EPL hired Schlumberger to clean out and fish a tool out of EPL's well located in the West Delta 29 Bock of the Gulf of Mexico, Offshore Louisiana. Schlumberger's supervisor was Duane P. Giroir ("Giroir"). The job lasted from December 30, 2011 to January 9, 2011. EPL contracted with Hercules to provide the lift boat the L/B BULL SHARK that would transfer Schlumberger employees

and equipment to the well and assist Schlumberger's operations as necessary with cranes. The BULL SHARK was situated next to the well platform, with a gangway plank between the two in order to facilitate walking between the BULL SHARK and the wellhead. EPL contracted with Greene's to supply a company man to oversee the work.

Plaintiff originally filed this action in the Fifteenth Judicial District Court, Lafayette Parish alleging negligence claims against Schlumberger, his employer. *R. 1-3.* Schlumberger removed the case to this Court on November 27, 2013. On June 2, 2015, the Court granted Schlumberger's motion for summary judgment finding that Plaintiff was not a Jones Act seaman. *R. 103.* Hence, Plaintiff's remedy for damages related to the January 9, 2012 incident is through the Longshore and Harbor Workers' Compensation Act" ("LHWCA"), 33 U.S.C. § 901, et al.

Plaintiff filed a First Amended Complaint alleging negligence against defendants EPL, Hercules, Gueho and Greene's. *R. 39.* Plaintiff also names Chris Guidroz, EPL's company man.[1] Plaintiff alleges that on January 8, or January 9, 2012,[2] he and the rest of the Schlumberger crew began the rigging down process. He alleges EPL and Guidroz made the decision that only one crew would be employed and would work more than 12 hours per day rather than employing two crews. Plaintiff further alleges the crew was made to rig down

---

[1] The record indicates that Guidroz has not been properly served.

[2] While Plaintiff alleges in his Original Petition the incident which caused his injury was on or about January 8, 2012, in his Opposition to defendants' motion he states the incident occurred at approximately 1:00 a.m. on January 9, 2012. The parties have not produced nor has the Court located any report related to the alleged incident or injury. *R. 106-6, Giroir Depo., pp. 90-91.*

2

the project in a continuous period of 18-21 hours without sleep. During part of the rigging down process, the liftboat's crane was used to reel in hydraulic power hoses that were previously secured to the injector head on the well. *R. 95-4, pp. 177-80.* During the reeling process, Plaintiff was removing equipment from the platform and carrying it back to the liftboat via the gangway. *R. 95-5, pp.69-70.* Plaintiff alleges he walked by the gangway and saw a hose caught between the gangway and the platform. *Id. at 189-91.* Plaintiff alleges, rather than use his radio to contact the crane operator, he used a hand signal for an "all stop." The crane operator allegedly did not stop reeling in the hose. Plaintiff alleges, since he was on the gangway, he pushed the hose over the handrail to dislodge it. *Id. at 189-92, 317-18.* In doing so, he allegedly injured his neck. *Id.*

## II. Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776,

3

781 (E.D.La.2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir.2004). The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

*III. Analysis*

Plaintiff claims his injury was caused by the negligence of Schlumberger, EPL, Hercules, Gueho and Greene's by requiring the crew to work too many hours per day on the job without allowing them to get sufficient rest, and by Schlumberger's failure to have a flag man for the crane lift. Each of the defendants has filed a motion for summary judgment contending that they have no liability for Plaintiff's alleged injury in this action and Plaintiff's claims against them should be dismissed with prejudice. Plaintiff filed one opposition memorandum addressing all of the defendants' claims.

*1. Independent Contractors—EPL, Hercules and Greene's*

EPL contends, as the operator of the subject well, it had no employees overseeing or working in connection with Plaintiff's job activities on the date of the alleged incident. EPL further contends it "did not give any specific directives whatsoever to Schlumberger or

4

Hercules as to how long their respective employees should work or how to do any part of their jobs." EPL asserts it hired Schlumberger and Hercules because "they were the respective experts at coiled tubing and lift boat operations" and "left the specifics to their expert judgment." EPL further asserts it contracted with Hercules and Schlumberger as independent contractors to provide services and equipment. EPL therefore maintains, because it did not direct any of the conduct Plaintiff alleges constituted negligence, it should be dismissed.

Negligence is an actionable wrong under general maritime law. The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law. To prevail on his maritime tort claim against the appellees, Plaintiff must prove that: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the actual damages (the damages element)." *McCarroll v. Seatrax Services, Inc.*, 2013 WL 3872219, *3 (E.D.La.,2013) (citing *Lemann v. Essen Lane Daiquiries, Inc.*, 923 So.2d 627, 633 (La.2006)). The plaintiff must prove each element to establish liability. *Id.*

Pursuant to Louisiana precedent and the Fifth Circuit's interpretation of it, a principal is typically not liable for the negligence of its independent contractor. *See Roberts v.*

*Cardinal Servs., Inc.*, 266 F.3d 368, 380 (5th Cir.2001). There are two exceptions to this rule: (1) when the principal maintains operational control over the activity in question; or (2) even in the absence of such control, when the activity is ultrahazardous. *Id.* Here, there is no allegation that Plaintiff was engaged in ultrahazardous activity. Thus, in order to find a principal liable for injuries resulting from the negligent acts of an independent contractor, Plaintiff must prove that "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Brown v. Total E & P USA Inc.*, 341 Fed.Appx. 24, 25 (5th Cir.2009) (quoting *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir.1997)). To find operational control "[t]here must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir.1989).

It is well-established under Louisiana law that "the relationship between the principal and the independent contractor is in large measure determined by the terms of the contract itself." *Duplantis v. Shell*, 948 F.2d 187, 193 (5th Cir.1991). By examining the contract, the court can determine to what extent the alleged principal reserved the right to control the alleged independent contractor's work. *Id.*

EPL's MSC with Schlumberger stated in pertinent part:

> [Schlumberger] shall perform its obligations for [EPL] as an independent contractor. [EPL] shall have no direction or control of the Work to be performed by [Schlumberger] or its employees, subcontractors, and agents, except in the results to be obtained.... The actual performance and superintendence of all Work hereunder shall be by [Schlumberger], but [EPL] or its representative shall have unlimited access to the operations to determine

6

> whether such Work is being performed by [Schlumberger] in accordance with all the provisions of this contract and any Work Order....

The Blanket Time Charter between EPL and Hercules stated, in part:

> [Hercules] shall man, supply, operate and navigate the vessel, which shall prosecute its trips and perform its services with dispatch, as directed by [EPL], but full responsibility for the management, operation, and navigation of the vessel shall at all time be and remain fully and in every respect that of [Hercules], the same as when trading for [Hercules'] account. Nothing contained herein shall be construed as making this charter a demise, nor as creating any obligation of [EPL] to furnish safe berth.
>
> The captain shall at all time be the sole judge of the safety or propriety of navigational, or of weather, or of other conditions for the performance of any direction given by [EPL]. He shall be under the absolute duty at all times to exercise and to act upon his own discretion as to lessen or in any way to relieve the captain of this responsibility or to modify this charter.

EPL contracted with Greene's to provide a company man for the project. Greene's had a written Individual Consultant Agreement with Guidroz to provide services as an independent contractor when Greene's customers, such as EPL, needed such services from time to time. *R. 95-3.* The Agreement stated in pertinent part:

> Consultant is and will be an independent contractor with full power and authority to select the means and method of performing the services to be performed under the agreement.... Consultant is not and will not be an employee or agent of [Greene's]. Since Consultant is an independent contractor, [Greene's] will not control the performance of the detail of any services, and Consultant, as an agent of the company shall be responsible for the results. Consultant is responsible for ensuring that the performance of such services is conducted in accordance with the relevant laws, regulations, decrees, and/or other official government orders of the agency having jurisdiction over the work site. Services must be conducted in a manner consistent with the appropriate safety, health, and environment consideration, including, but not limited to, the policies of [Greene's] and the client....

*Id.* Pursuant to the Consultant Agreement, from approximately January 6, 2012 through approximately January 9, 2012 Guidroz worked on the BULL SHARK as a company man for EPL's operations. *Id.* Greene's affirms that Guidroz "maintained sole discretion on the manner, means, and methods of performing his work" during the entire time he was working on the EPL project. Guidroz testified that as the company man, he documented the work and reported back to EPL in the form of "Daily Completion/WO Reports." *R. 93-4.* He further testified he left the direction of the coiled tubing job up to Schlumberger's and Hercules' supervisors. *R. 93-5.*

i. *Whether EPL, Greene's or Guidroz Retained Operational Control*

Plaintiff contends "EPL had knowledge of the allegedly defective conditions" that caused his injury. Plaintiff also contends "EPL set unsafe parameters ... through an EPL company man and then through Greene's and Guidroz." *R. 104-2.* Plaintiff's allegations as well as the argument in his opposition provide no support for any defective condition of the equipment involved in the derigging procedure—the power hose which was hung up between the platform railing and the gangway plank—which allegedly caused his injury. The Court assumes, therefore, that Plaintiff's claim is that EPL knew of the conditions which he contends caused his injury. Apparently, Plaintiff cites *Denson v. Diamond Offshore Co.*, 955 So.2d 730, 734-35 (La. 2007) in support of this contention.

*Denson* is distinguishable from the facts of this case. In *Denson*, the Master Service Contract ("MSC") stated the contractor "was under the direction and supervision" and was required "to comply with all instructions" of the operator. *Id.* at 735-36. Here, EPL's MSC

with Schlumberger specifically states that the contractor must perform its obligations for EPL "as an independent contractor" and EPL "shall have no direction or control of the work." *R. 93-6.*

Plaintiff does not dispute and cites no evidence to dispute that EPL had no employees overseeing or working in connection with Plaintiff's job activities on the date of the incident. Nor has Plaintiff provided any evidence to dispute that Schlumberger and Hercules were independent contractors in which EPL gave no specific directives as to how long their respective employees should work or how to do any part of their jobs.

Plaintiff contends that Guidroz "was in the course and scope of his employment with Greene's, and Greene's was in the course and scope of its undertaking as EPL's agent to provide a safe place to work." Plaintiff cites *Ledet v. Moran Bros. Drilling Co.*, 590 So.2d 631, 632-33 (La.App. 3 Cir., 1991) noting that the court denied "the contention that the relationship was principal and independent contractor." *R. 106. Ledet*, however, is not on point with the facts of this case. In *Ledet* the court found that the contractor provided equipment and then gave direct instruction to the sub-contractor's employee on how to utilize the equipment in performing his duties. *Ledet*, 590 So.2d at 633.

Where a principal (such as EPL or Greene's) "exercises operational control over or expressly or impliedly authorizes the independent contractor's actions," the principal may be held liable. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir.1989). In order for this exception to the general rule to apply, "[t]here must be such a retention of right

9

of supervision that the contractor is not entirely free to do the work in his own way." *Id.* at 1471. Such operational control must consist of more than the simple power to order a stop to or resumption of work, the right to inspect the work or receive progress reports, the right to make non-binding recommendations, or the right to dictate "alterations or deviations." *Id.* The presence of a company man or representative, even one making inspections, is not sufficient to put the principal in operational control. *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir.2003).

Plaintiff has produced nothing to dispute, that Guidroz was an independent contractor pursuant to his contract with Greene's, serving as EPL's on-site representative. As the EPL's representative, Guidroz was responsible for documenting the work and reporting back to EPL in the form of "Daily Completion/WO Reports." *R. 93-4*. There is no genuine issue of material fact that neither EPL nor Greene's exercised operational control over Guidroz or the Schlumberger's work.

*2. Whether EPL or Guidroz Was Negligent*

Plaintiff also contends EPL and Guidroz requested that Schlumberger employ only one crew and knew that Schlumberger's supervisor, Giroir, was going to make Plaintiff and the other crew members "spend excessive hours in derigging." Plaintiff further contends EPL and Guidroz did not insist that Schlumberger have a Job Safety Analysis ("JSA") or that a dedicated flagman be present during the derigging. Plaintiff cites several cases he contends support his position that EPL and Guidroz should be liable because they knew of the hours

10

worked by Schlumberger personnel. As provided in the following discussion, these cases are inapposite to the facts in this case.

In *Gay v. Barge 266*, 915 F.2d 1007, 1012-13 (5th Cir. 1990), the court found the shipowner had actual knowledge that the barge had no gangway and therefore could be liable for the plaintiff's injury which occurred when he was forced to use a board as a gangway. Likewise, in *Bass v. Superior Energy Servs.*, 2015 WL 460378 (E.D. La. 2015), the plaintiff testified he was told by Superior's supervisor to move a hose, which caused him to sustain injuries. *Id.* at *8. The court found genuine issues of material fact existed as to whether Superior was actually in charge of the operation where the plaintiff was injured. Here, there is nothing to suggest that Plaintiff was instructed to move the hung-up hose. Rather, Plaintiff stated he decided on his own to lift the hose.

Schlumberger's supervisor for the job, Cory Babineaux, testified that Schlumberger, not EPL or Guidroz, ultimately decided how many crews to send to a job. *R. 93-9, p. 29*. Gueho stated in his affidavit that, contrary to Plaintiff's contentions, Hercules scheduled crane operators on two shifts. During the time of the incident he was assigned to work as a crane operator during the night shift (6 p.m. to 6 a.m.) and another crane operator, Clavin Oliva, was the day crane operator during the day shift (6 a.m. to 6 p.m.). *R. 109-7*. Gueho confirmed he took direction only from the Schlumberger personnel during the rigging down process and never took direction from either EPL or Guidroz. *Id.* Plaintiff has provided no evidence besides his own allegations that EPL or Guidroz ordered that only one crew would

11

be used on the project or that the crew would work more than twelve hours a day.

To the extent Plaintiff contends that EPL and Guidroz were negligent in not preparing a JSA for the Schlumberger job at issue, the record provides that a JSA for rigging up and rigging down was conducted by Schlumberger on December 31, 2011. *R. 109-4.* Chris Martin, a Schlumberger engineer on the job, testified that the rigging down process commenced at 5:43 p.m. and a safety meeting was held before the process began. *R. 109-5, pp. 26-27.* As to providing a flagman for the procedure, Martin also testified that, although he did not know who the flagman was, he believed a flagman was assigned to the rigging down process because it was "general safe work practices, that we assign a flagman for every lift." *Id., p. 28.* In that regard, Toby Falcon, Schlumberger's field supervisor, confirmed it was "standard protocol" to have a flagman with the crane. *R. 106-6, Falcon Depo., p. 67.*

3. *Whether Hercules Was Negligent*

Plaintiff alleges that Gueho, Hercules' crane operator, acted negligently by failing to stop reeling the hose once it hung up or in failing to see Plaintiff's hand signal to stop the reeling process. Plaintiff stated in his deposition that he was not part of the reeling process but "was walking past the gangplank on the platform" when he saw the hose was caught. He explains his actions as, "I went over to it ... and put my hand up ... to tell [Gueho] to stop reeling it in, and then tried to pick it up and throw it over." *R. 104-8, pp. 70-71.*

Hercules initially asserts there is no evidence that the alleged incident occurred at all. It cites the deposition testimony of Guidroz, *R. 94-4, p. 90*, Martin, *R. 94-5, p. 39*, and Giroir,

12

*R. 94-6, pp. 103-04*, who all stated that while they were working on the project they did not recall any such incident occurring. The record does not contain an incident report related to Plaintiff's alleged injury. Hercules further asserts, even assuming *arguendo* that the incident actually occurred, Plaintiff has no viable negligence claim against it.

Hercules argues it had no duty to prevent Plaintiff's alleged injury, and even if there was a duty, there is no evidence Hercules breached any duty. A threshold issue in a negligence action is whether the defendant owed a duty. *McCarroll v. Seatrax Services, Inc.*, 2013 WL 3872219, *3 (E.D.La.,2013). "Whether a duty is owed is a question of law." *Id.; Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir.1992). Courts consider the "unique facts and circumstances presented" in each action to determine whether a duty exists. *Id.*

Generally, an independent contractor does not owe a special duty to protect the employee of another independent contractor. *McCarroll* at *4 (citing *Joyner v. Ensco Offshore Co.*, 2001 WL 118599 at *4 (E.D.La. Feb. 9, 2001); *Verdin v. Kerr McGee Corp.*, 1997 WL 39308 at *2 (E.D.La. Jan. 30, 1997); *Parker v. Petroleum Helicopters, Inc.*, 2002 WL 461655 at *1 n. 2 (E.D.La. Mar. 20, 2002)). Rather, the duty imposed upon fellow independent contractors is "that imposed on all persons, the exercise of reasonable care." *McCarroll* at *4.

Hercules and Schlumberger were both independent contractors on the project. Under general maritime law, an independent contractor owes no duty to employees of a fellow independent contractor unless it exercised operational control over the work the employees

13

performed. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir.1989). Similarly, under Louisiana law, an independent contractor owes no duty to another contractor's employee because it did not employ, share a contract, or actually supervise the plaintiff. *Parker v. Petroleum Helicopters, Inc*, 2002 WL 461655 at *1. Likewise, an independent contractor owes no duty to another independent contractor because it did not employ, pay, or provide equipment to the plaintiff. *Gray v. Motiva Enterprises*, 2002 WL 826606, at *2 (E.D.La. Apr. 30, 2002). Here, Hercules did not employ or have a contractual agreement with Plaintiff or Schlumberger. EPL hired Hercules as an independent contractor to perform the crane operations; it was not Hercules' responsibility to supervise the employees of the co-independent contractor, Schlumberger.

Hercules contends there is no evidence indicating that Hercules had a duty to Schlumberger employees related to risks created during the rigging down process. In particular, to prevent Plaintiff from injuring his neck by voluntarily pushing a hose off of a gangway. Hercules cites the testimony of Babineaux and Plaintiff's co-worker, Chris Martin, who each stated that the proper protocol would have been to call an all stop "until they had an opportunity to release" the hose. *R. 94-5, pp. 32; R. 94-9, p. 134-35.* Giroir, Plaintiff's supervisor, further stated that the entire crew had radios set to the crane operator's frequency and a well-communicated "all stop" and any physical intervention should have been curtailed until they determined what to do. *R. 106-6, Giroir Depo., p. 93.* Finally, Hercules cites Plaintiff's own testimony confirming that his physical intervention of pushing the hose over

was unsafe. *R. 94-3, pp. 217-18.*

Hercules contends that it does not have a duty to keep other company's employees from committing unsafe work practices, and therefore, should not be held liable for Plaintiff's injury. In *Joyner v. Ensco Offshore Co.,* 2001 WL 118599, *4 (E.D.La.,2001), the court granted summary judgment in favor of an independent contractor because the plaintiff, Joyner's, own improper work practice caused his injury. *Id.* As in this case, Joyner's employer and the defendant were independent contractors of the operator. Joyner alleged he was injured while carrying out an instruction given by an employee of the defendant. *Id.* The court held the defendant had no duty to prevent Joyner from committing the unsafe work practice. *Id.* at *5. The court specifically noted, Joyner did not object to the instruction, had specialized knowledge of the equipment and it was Joyner's own decision to choose his work method. *Id.*

Here, Hercules did not assume any role of authority or supervision over Plaintiff and Plaintiff presents no evidence to show that Hercules was supervising him when he was injured. As in *Joyner*, Plaintiff confirmed his action of pushing the hose off the gangway was his own decision. Plaintiff had specialized knowledge of the hose in this case and stated that he had performed the action before. The Court cannot find that any duty Hercules owed to Plaintiff encompassed the risk that Plaintiff would be injured performing an action that Plaintiff himself, an experienced tubing worker, chose to perform. Thus, Plaintiff claims against Hercules fail to establish a breach of duty and Hercules' and Gueho's motion will be

15

granted.

*IV. Conclusion*

Based on the record and the applicable jurisprudence, and for the reasons provided in the foregoing, the Court will grant the motions for summary judgment filed by EPL, Hercules, Gueho and Greene's.

_____
Richard T. Haik, Sr.